UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOSUE BARRIENTOS,** *et al.*, <br><br>Plaintiffs, <br><br>v. <br><br>**AMERIGAL CONSTRUCTION CO. INC.,** *et al.*, <br><br>Defendants. | No. 22-cv-2618-TSC-ZMF |

**REPORT AND RECOMMENDATION**

This case stems from a wage dispute between construction workers and their employers and public works project contractors. Pending before the Court are: (1) Joint Motion for Approval of Settlement between Plaintiffs and Defendant Capitol Paving of D.C., Inc. ("Capitol Paving"), *see* ECF No. 76; (2) Joint Motion for Approval of Settlement between Plaintiffs and Defendant Fort Myer Construction Corp. ("Fort Myer"), *see* ECF No. 79; (3) Joint Motion for Approval of Consent Decree Between Plaintiffs and Defendant Amerigal Construction Co. Inc. ("Amerigal"), *see* ECF No. 80; and (4) Fort Myer's Motion for Partial Summary Judgment[1], *see* ECF No. 63. For the reasons set forth herein, the undersigned recommends that Joint Motions for Approval of Settlements, *see* ECF Nos. 76, 79, be DENIED, the Joint Motion for Approval of Amerigal Consent Decree, *see* ECF No. 80, be GRANTED in part, and the Motion for Partial Summary Judgment by Fort Myer, *see* ECF No. 63, be DENIED as moot.

---

[1] Defendant Amerigal gave the Court notice of its joining Fort Myer's Motion for Partial Summary Judgment. *See* ECF No. 64.

1

I.  **BACKGROUND**

The underlying facts in this matter are set out in a prior Report and Recommendation. *See* ECF No. 37. In brief, Plaintiffs are former or current employees of Defendants Amerigal and Luis Ezequiel,[2] Amerigal's owner. *See* Second Am. Compl. ("Second Am. Compl.") ¶ 30, ECF No. 59. Between August 2019 and the filing of the initial complaint, Plaintiffs performed work on public works projects on which Defendant Capitol Paving and Defendant Fort Myer were general contractors. *See id.* On September 18, 2024, Plaintiffs filed their second amended complaint in this case, alleging: (1) Amerigal and Ezequiel deprived Plaintiffs of overtime and other wages in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), *see id.* at ¶¶ 111–19; (2) Amerigal, Ezequiel, and Capitol Paving failed to pay Plaintiffs all wages earned—including overtime—at the prevailing wage in violation of D.C. Code §§ 32-1301, *et seq.*, *see id.* at ¶¶ 120–45; (3) Amerigal, Ezequiel, and Capitol Paving made unlawful wage deductions in violation of D.C. Code § 32-1301, *et seq.*, *see id.* at ¶¶ 146–52; (4) Amerigal, Ezequiel, Capitol Paving, and Fort Myer failed to pay all wages due in violation of Md. Code Ann. § 17-201, *et seq.*, *see id.* at ¶¶ 153–68; (5) Amerigal, Ezequiel, Capitol Paving, and Fort Myer improperly deducted wages in violation of Md. Code Ann. § 3-502, 503, *see id.* at ¶¶ 169–76; and (6) Amerigal, Ezequiel, Capitol Paving, and Fort Myer breached their contracts, *see id.* at ¶¶ 177–88.

On January 21, 2025, Plaintiffs and Capitol Paving filed a joint status report indicating their intent to settle. *See* ECF No. 74. On February 13, 2025, Plaintiffs and Capitol Paving jointly

---

[2] On July 5, 2024, Ezequiel filed a Notice of Pendency of Chapter 7 Bankruptcy. *See* Notice, ECF No. 54. On September 19, 2024, the U.S. Bankruptcy Court for the District of Maryland issued an order of discharge under 11 U.S.C. § 727 as to Ezequiel. *See In re Luis De Almeida Ezequiel*, 24-mcr-14872, ECF No. 23. "This order means that no one may make any attempt to collect a discharged debt from the debtors personally." *Id.*

moved for an order approving their settlement of non-FLSA claims. *See* Joint Mot. Settlement, ECF No. 76 ("Capitol Paving Joint Mot."); *see also* Settlement Term Sheet, ECF No. 76-3 ("Capitol Paving Settlement").

On April 1, 2025, Plaintiffs and Fort Myer filed a joint status report indicating their intent to settle. *See* ECF No. 77. Plaintiffs and Fort Myer subsequently moved for an order approving their settlement of non-FLSA claims. *See* Joint Mot. Settlement, ECF No. 79 ("Fort Myer Joint Mot.").

On May 14, 2025, Plaintiffs and Amerigal filed a joint motion to approve a consent decree around FLSA and state wage law claims. *See* Joint Mot. Consent Decree, ECF No. 80 ("Amerigal Joint Mot.").

On May 19, 2025, the parties filed a Joint Status Report indicating that Plaintiffs settled with all defendants except Ezequiel, in light of Ezequiel's bankruptcy. *See* May 19, 2025 Joint Status Rep. 1 ("JSR"), ECF No. 81. The parties further indicated that upon approval of the settlement agreements, "this case will be fully resolved aside from the Court retaining jurisdiction to enforce the settlements and consent decree." *Id.* at 2.

A. Capitol Paving Settlement

Capitol Paving agreed to pay $370,000.00 to settle Plaintiffs' claims against it, allocated as follows: (1) $175,000 to be paid as back pay and liquidated damages; (2) $175,000 as attorneys' fees and costs; and (3) $20,000 as incentive awards, allocated equally to the four lead plaintiffs. *See* Capitol Paving Settlement at ¶ 2. The $175,000 will be divided *pro rata* based on the sums of wages owed to each plaintiff. *See* Capitol Paving Settlement at ¶ 18; *see also* Capitol Paving Settlement, Attach. A (*pro rata* itemization of lost wages and statutory damages for each plaintiff from $175,000 sum). Unpaid wages were "based on Plaintiffs' best recollections of their hours

3

worked and wages owed." Capitol Paving Settlement at ¶ 18. The $175,000 settlement amounts to more than the maximum possible recovery under the FLSA, and approximately 59.3% of their possible recovery against Capitol Paving pursuant to D.C. law. *See id.* at ¶ 19. Counsel for Plaintiffs noted that principal issues in dispute included the amount of wages owed and the availability of statutory damages. *See* Decl. Arlus Stephens ¶ 11, ECF No. 76-4 ("Stephens Decl."). Counsel for Plaintiffs "believe[s] the proposed Settlement Agreement is in Plaintiffs' best interest." *Id.* at ¶ 15.

B. Fort Myer Settlement

Fort Myer agreed to pay $200,000 to settle Plaintiffs' claims against it, allocated as follows: (1) $100,000 toward unpaid wages and damages, to be distributed *pro rata* based on estimated amounts owed to each plaintiff; (2) $20,000 incentive awards, allocated equally to the four lead plaintiffs; and (3) $80,000 as attorneys' fees and costs. *See* Fort Myer Settlement at ¶ 1. The agreement also requires plaintiffs to sign general releases "as a condition of payment." *See id.* at ¶ 2. Further, "Fort Myer will pay employer taxes on 1/3 [] of the $100,000.00 attributable to unpaid wages and damages." *Id.* at ¶ 7. Counsel for Plaintiffs noted the same principle issues mentioned above and that the Settlement Agreement "is in Plaintiffs' best interest." *See* Decl. Arlus Stephens ¶¶ 11, 15, ECF No. 79-3 ("Stephens Decl. II").

C. Amerigal Consent Decree

Amerigal claimed that it lacks funds to pay Plaintiffs anything. Plaintiffs and Amerigal jointly expressed that the Capitol Paving and Fort Myer settlements "will provide Plaintiffs with appropriate compensation for the claims alleged." *See* Amerigal Consent Decree ¶¶ 14, 15. "Plaintiffs believe that given their settlements with Fort Myer and Capitol Paving, and given Amerigal's representation that it lacks the ability to pay Plaintiffs anything in connection with the

4

Lawsuit, it is in Plaintiffs' best interest to agree to the terms in this Consent Decree." *Id.* at ¶ 15. The Consent Decree precludes Amerigal from performing any work for the Washington Suburban Sanitary Commission or D.C. Water for two years. *Id.* at ¶ 16. Further, Ezequiel "will not own, control, or manage any construction company that performs any work under any contract with D.C. Water or WSSC" for the same two-year period. *Id.* at ¶ 18.

## II.   LEGAL STANDARD

Generally, parties in a civil case may privately settle and voluntarily dismiss their case. *See* Fed. R. Civ. P. 41(a). FLSA claims though, require more. *See Brooklyn Sav. Bank v. O'Neil*, 325 U.S. 697, 706–07 (1945). The D.C. Circuit "has not opined about whether judicial approval is required of FLSA settlements . . . or . . . whether such approval is a prerequisite for subsequent judicial enforcement of a private settlement." *Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 129 (D.D.C. 2014). However, district courts have observed that "FLSA rights cannot be abridged or otherwise waived by contract because such private settlements would allow parties to circumvent the purposes of the statute by agreeing on sub-minimum wages." *Beard v. D.C. Hous. Auth.*, 584 F. Supp. 2d 139, 143 (D.D.C. 2008).

The FLSA provides for a settlement: (1) supervised by the Secretary of Labor, 29 U.S.C. § 216(c), or (2) scrutinized and approved by a "court of competent jurisdiction," *id.* at § 216(b). The benefit of prior judicial review is that avoids "leav[ing] parties in an uncertain position." *Carillo*, 51 F. Supp. 3d at 130–31. Here, the parties jointly seek judicial approval. *See* Amerigal Consent Decree.

## III.   DISCUSSION

### A.   Non-FLSA Settlement Terms

5

"The Court's review of a proposed FLSA settlement is properly limited only to those terms precisely addressing the compromised monetary amounts to resolve pending wage and overtime claims." *Carrillo*, 51 F. Supp. 3d at 134. Non-FLSA terms "may or may not be enforceable in the future." *Id.* Thus, the undersigned declines to opine as to those terms. *See id.*

Plaintiffs' claims against Capitol Paving and Fort Myer fall under D.C. and Maryland state wage laws, not the FLSA. *See* Second Am. Compl. ¶¶ 120–76. Thus, the Court need not approve of those two settlement agreements. *See Meyer v. Panera Bread Co.*, No. 17-cv-2565, 2019 WL 11271381, at *6 (D.D.C. Mar. 6, 2019) (declining to review settlement terms "unrelated to the Court's task of evaluating the fairness of Plaintiffs' FLSA claims").

Plaintiffs' only FLSA claims are against Amerigal and Ezequiel. *See* Second Am. Compl. ¶¶ 111–19. The Amerigal Consent Decree—which resolves Plaintiffs' FLSA claims—incorporates the terms of the two non-FLSA settlement agreements as means of resolving FLSA claims. Thus, the Court reviews these terms within the context of that Consent Decree. The Consent Decree also includes terms that are not related to wage-and-hour claims. For example, the Consent Decree includes terms related to injunctive relief. *See* Amerigal Consent Decree at ¶¶ 16–19. The Court declines to opine as to those terms. *See Carrillo*, 51 F. Supp. 3d at 134 (declining to approve all terms of FLSA settlement agreement, including clauses directing plaintiffs to "stay away" from defendants, as well as requiring the signing of a release).

B.   FLSA Terms

Courts review FLSA settlement agreements using a two-step test. "First, the Court must ensure the agreement resolves a bona fide dispute—that is, it reflects a reasonable compromise over issues that are actually in dispute." *Davis v. Kettler Mgmt.*, No. 21-cv-3351, 2022 WL 17146742, at *1 (D.D.C. Nov. 22, 2022) (quotations omitted). Second, "the Court must confirm

that the agreement is substantively fair." *Rivas Ferrera v. Foulger-Pratt Constr. Inc.*, 747 F. Supp. 3d 203, 209 (D.D.C. 2024) (citing *Davis*, 2022 WL 17146742, at *1).

### 1. *There is a bona fide dispute.*

"A settlement is bona fide if it reflects a reasonable compromise over issues that are actually in dispute, since merely waiving a right to wages owed is disallowed." *Carillo*, 51 F. Supp. 3d at 132.

The Consent Decree resolves a bona fide dispute: the amount of wages that were owed and the amount of statutory damages to which Plaintiffs were entitled. *See* Stephens Decl. ¶ 15; *also* Stephens Decl. II ¶ 15. The parties disputed whether "Amerigal violated the FLSA, D.C. law, or Maryland law." Amerigal Consent Decree at ¶ 11. These disagreements have lasted throughout the course of this three-year litigation. "Plaintiffs have not simply waived away their rights." *Rivas Ferrera*, 747 F. Supp. 3d at 209.

### 2. *The Settlement Agreement is Substantively Fair.*

"Three factors bear on the fairness of an FLSA settlement: (1) whether the settlement stemmed from employer overreach; (2) whether it was the product of negotiation between represented parties following arm's length bargaining; and (3) whether there exist serious impediments to the collection of a judgment by the plaintiffs." *Rivas Ferrera*, 747 F. Supp. 3d at 209 (citing *Carrillo*, 51 F. Supp. 3d at 132). In making this evaluation, a "[c]ourt should be mindful of the strong presumption in favor of finding a settlement fair." *Sarceno v. Choi*, 78 F. Supp. 3d 446, 451 (D.D.C. 2015) (citing *Velez v. Audio Excellence, Inc.*, No. 10–cv–1448, 2011 WL 4460110, at *1 (M.D. Fla. Sept. 21, 2011)). After all, "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11-529, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013).

As to the first factor, courts frequently "compar[e] the settlement sum against plaintiffs' position and defendants' position." *Rivas Ferrera*, 747 F. Supp. 3d at 209. Here, plaintiffs have not provided their position. Regardless, employer overreach is not at issue given that the bankruptcy court order discharged Ezequiel from debt collection, *see supra* at n.2, and Amerigal lacks the funds to pay plaintiffs, *see* Amerigal Consent Decree at ¶ 14. Thus, defendants' position is effectively $0. Should the parties proceed to trial, plaintiffs would likely be unable to recover anything from Amerigal and Ezequiel. In contrast, under this Consent Decree, plaintiffs are afforded "more than the maximum possible recovery under the FLSA." Capitol Paving Settlement at ¶ 19.

Counsel's experience can also resolve the question of employer overreach. *See Sarceno*, 78 F. Supp. 3d at 451. "When the parties' counsel have extensive experience in pursuing and defending FLSA actions generally and familiarity with the underlying facts, courts can credit their representation that the amounts agreed upon are a reasonable compromise." *Rivas Ferrera*, 747 F. Supp. 3d at 210 (citing *Sarceno*, 78 F. Supp. 3d at 451). Plaintiffs are represented by Arlus Stephens of Murphy Anderson PLLC. *See* Stephens Decl. ¶¶ 1, 3. Mr. Stephens and his firm have significant experience litigating FLSA cases in federal court. *See id.* at ¶ 2. Mr. Stephens is thoroughly familiar with the case: he has represented plaintiffs since the onset of this litigation, including investigatory steps. *See* Stephens Decl. ¶¶ 5, 7; *see also* Stephens Decl. II ¶¶ 5, 7. And in Mr. Stephens' estimation, Plaintiffs have agreed to a fair settlement that is in their "best interest." *See supra* at Parts I.B, C. Thus, the first factor favors approving the FLSA-related terms of the Consent Decree.

As to the second factor, there is ample evidence of arms' length bargaining between the parties. The Consent Decree "bears all the indicia of [an agreement] that leads to a just outcome."

*Carillo*, 51 F. Supp. 3d at 134. It comes on the heels of three-years' worth of litigation, including extensive settlement discussions, preparation of mediation statements, discovery (including depositions and drafting of third-party subpoenas to agencies to obtain certified payroll records), and briefing of dispositive motions. *See* Stephens Decl. ¶ 13. This robust level of litigation demonstrates arms' length bargaining. *See Rivas Ferrera*, 747 F. Supp. 3d at 210 (finding arms' length bargaining where parties engaged in thorough investigation, conducted informal discovery, and participated in virtual settlement conferences). Thus, the second factor also favors approving the FLSA-related terms of the Consent Decree.

As to the third factor, the settlement agreements incorporated by the Consent Decree allows plaintiffs to recover within 30 days of the Court's approval. *See* Capitol Paving Joint Mot. at 11-12; *see also* Fort Myer Joint Mot. at 12. And "by settling now, the plaintiffs will obtain a recovery without further delay and without incurring additional litigation costs and additional attorney's fees and costs." *Carrillo*, 51 F. Supp. 3d at 134 (internal quotations omitted). The proposed settlement timeline "is undoubtedly quicker than this case could proceed to judgment given the typical time frame for discovery and the Court's heavy trial calendar." *Trout v. Select Grp. Fed., LLC*, No. 21-cv-1684, 2023 WL 6583828, at *6 (D.D.C. Oct. 10, 2023). Thus, the third factor also favors approving the FLSA-related terms of the Consent Decree.

The Consent Decree reflects a fair and reasonable resolution to a bona fide dispute.

### 3. *Attorneys' fees are reasonable.*

"Courts scrutinize the attorney's fees allocated in proposed FLSA settlement agreements to ensure that the interest of plaintiffs' counsel in counsel's own compensation did not adversely affect the extent of the relief counsel [procured] for the clients." *Meyer*, 2019 WL 11271381, at *9 (internal quotations and citation omitted). Here, the negotiated attorneys' fees represent less than

50% of the total recovery. *See* Table 1. This percentage falls within the realm of previously approved fee awards. *See* Table 1; *see also Trout*, 2023 WL 6583828, at *7–8 (approving fees amounting to 40% of total FLSA settlement); *see also Carrillo*, 51 F. Supp. 3d at 133–34 (approving fees amounting to approximately 50% of total FLSA settlement). Thus, the undersigned finds that the below proposed allocation of attorney's fees and costs is reasonable.

Table 1: Allocation of Settlement Funds Under Consent Decree

| Agreement | Unpaid Wages and Damages | Incentive to Lead Plaintiffs | Attorneys' fees and costs | |
|---|---|---|---|---|
| Fort Myer | $100,000.00 | $20,000.00 | $80,000.00 | |
| Capitol Paving | $175,000.00 | $20,000.00 | $175,000.00 | |
| Totals | $275,000.00 | $40,000.00 | $255,000 | $570,000.00 |
| Percentage of Total paid by both Defendants | 48.25% | 7.02% | 44.73% | |

## IV.   RECOMMENDATION[3]

For the foregoing reasons, the undersigned recommends DENYING Capitol Paving and Fort Myer's Joint Motions for Settlement, as the parties need not seek court approval for resolution of non-FLSA claims. The parties are free to enter this resolution directly, without Court involvement. The undersigned further recommends GRANTING Amerigal's Joint Motion for Entry of Consent Decree as to the wage-and-hour terms, as it represents a bona fide compromise

---

[3] Per Local Rule 72.3(b) of the U.S. District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within fourteen days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the report and/or recommendation to which objection is made and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 144–45 (1985).

of plaintiffs' FLSA claims that are fair and reasonable in light of the factual circumstances and the FLSA's statutory requirements. But the undersigned recommends DECLINING to opine on aspects of the Consent Decree which do not directly pertain to the payment of wages to plaintiffs. Finally, because the parties agree that the settlement agreements and consent decree resolve all outstanding disputes, the undersigned recommends that the pending Motion for Partial Summary Judgment be DISMISSED as moot.

Date: July 16, 2025

                                                                         _____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE